**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **BLAKE HIGGINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   11-CV-90-JHP-TLW |
| | ) |
| **STATE AUTO PROPERTY &** | ) |
| **CASUALTY INSURANCE COMPANY** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**[1]

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Plaintiff's Motion),[2] Defendant's Motion for Summary Judgment and Brief in Support (Defendant's Motion),[3] Plaintiff's Errata/Correction to Plaintiff's Motion for Partial Summary Judgment,[4] Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Defendant's Response),[5] Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Response),[6] Plaintiff's Reply Brief to Defendant's Response to Plaintiff's Motion for Partial

---

[1] Page number citations in this Opinion and Order refer to the CM/ECF pagination.

[2] Docket No.'s 136,138. Plaintiff filed two copies of his Motion, one with redacted exhibits at Docket No. 136, and one with unredacted exhibits at Docket No. 138. Throughout this Opinion and Order, the Court references the unredacted Motion Docket No. 138 exclusively.

[3] Docket No. 137.

[4] Docket No. 196.

[5] Docket No. 202.

[6] Docket No. 200.

1

Summary Judgment (Plaintiff's Reply),[7] and Defendant's Reply in Support of Motion for Summary Judgment (Defendant's Reply).[8] Also considered by the Court are Defendant State Auto Property and Casualty Company's Memorandum of Authorities Regarding Stacking,[9] Plaintiff's Supplemental Brief in Support of Summary Judgment,[10] Defendant State Auto Property and Casualty Company's Response to Plaintiff's Supplemental Brief on Stacking,[11] and Plaintiff's Brief in Opposition to State Auto's Memorandum of Authorities Regarding Stacking.[12] For the reasons detailed below, Plaintiff's Motion for Partial Summary Judgment is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED IN PART**, **DENIED IN PART**.

## BACKGROUND

### A. Undisputed Factual Background[13]

The instant case arises from a September 27, 2009 automobile accident in which Plaintiff was struck by another vehicle.[14] At the time of the Accident, Plaintiff was operating a vehicle owned by his employer Empire Plumbing Supply Company, Inc. (Empire).[15] The vehicle was covered by

---

[7]Docket No. 234.

[8]Docket No. 233.

[9]Docket No. 254.

[10]Docket No. 255.

[11]Docket No. 280.

[12]Docket No. 281.

[13]The following facts are either not specifically controverted in accordance with Local Civil Rule 56.1©. Immaterial facts and facts clearly in dispute are omitted.

[14]Plaintiff's Motion at 5, Docket No. 138; Defendant's Response at 5, Docket 202.

[15]*Id.* at 5-6; *id.* at 5.

a insurance policy (Policy) from State Auto Property and Casualty Insurance Company (State Auto), a policy which included uninsured/under insured motorist (UIM) coverage with a medical pay limit of $2,000 and an individual policy limit of $1,000,000.[16] As a consequence of his operating a covered vehicle at the time of the accident, Plaintiff was covered by this UIM policy.[17] Plaintiff was determined to be not at fault for the accident.[18]

Defendant received notice of the accident on November 11, 2009, and on November 13, 2009, Defendant received a release form from the accident tortfeasor's insurance company in the amount of $25,000.00, the tortfeasor's liability limit.[19] Both parties concede Plaintiff's damages exceed the $25,000 liability limit.[20] On November 16, 2009, Plaintiff executed and returned a medical records authorization to Defendant, although the extent of that authorization is disputed.[21] On December 1, 2009, Defendant released its right of subrogation against the tortfeasor's insurance company.[22]

Early in the claim process, Plaintiff was represented by Attorney Tom Sullivent, who exchanged multiple letters with claims adjusters regarding Plaintiff's claim.[23] The record shows that

---

[16]*Id.* at 5; *id.* at 5.

[17]*Id.*

[18]*Id.* at 6; *id.* at 5.

[19]*Id.; id.* at 6.

[20]Plaintiff's Motion at 6, Docket No. 138; Defendant's Response at 5, Docket No. 202.

[21]Plaintiff's Motion at 7, Docket No. 138; Defendant's Response at 6, Docket No. 202.

[22]*Id.* at 6*; id.* at 6.

[23]*Id.* at 7.

3

on September 10, 2010, Attorney Sullivent submitted medical bills totaling the amount of $79,182.84, and on November 8, 2010, Sullivent Submitted further bills bring that total to $86,531.09.[24] It is unclear whether any of these bills had been partially paid by Plaintiff's health insurance. Plaintiff's initial demand of a $425,000 partial payment was denied, and, on January 5, 2011, after no payment was tendered, Attorney Sullivent brought the instant suit in Tulsa County District Court.[25]

Over the course of the claims process and through the litigation, several adjusters reviewed Plaintiff's claim, and it remains disputed as to whether or not these adjusters were able to adequately evaluate Plaintiff's medical expenses and claims for lost wages.[26] It is undisputed that on or about January 26 2010, Plaintiff received medical pay benefits of $2,000, the limits of the medical pay portion of the Policy.[27] Defendant made no other payments to Plaintiff until January 25, 2012, over one year after the commencement of this litigation, when it tendered a partial payment to Plaintiff, Plaintiff's attorneys, and certain medical providers in the amount of $375,000.[28]

## DISCUSSION

**A. Summary Judgment Standard**

Plaintiff's First Amended Complaint seeks relief for (1) breach of the insurer's duty to deal fairly and in good faith; (2) negligent claims handling; (3) breach of the insurance agreement (breach

---

[24]*See* Letter at 1, Docket No. 138-29; Letter at 1 Docket No. 138-32.

[25]*See* Letter at 1, Docket No. 138-29; Petition at 3, Docket No. 4.

[26]*See* Defendant's Response at 8, Docket No. 202.

[27]Defendant's Motion at 8, Docket No. 137.

[28]*See* Letter and Check at 1-3, Docket 78-2.

of contract); and (4) punitive damages.[29] In his Motion for Partial Summary Judgment Plaintiff seeks summary judgment as to his claims of bad faith and breach of contract.[30] In its Motion for Summary Judgment, Defendant seeks summary judgment as to Plaintiff's multiple allegations of bad faith, and Plaintiff's allegations of breach, negligence, and request for punitive damages.[31] Through Plaintiff's Response to Defendant's Motion for Summary Judgment, the Court is aware that the parties have agreed to a stipulation of dismissal with regard to Plaintiff's allegation of negligent claims handling.[32] As such, that claim is **DISMISSED**.

Federal Rule of Civil Procedure 56(c) provides the standard courts must use when determining whether summary judgment is proper. According to the rule, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[33] A material fact is one that is essential to disposition of a claim, and a genuine issue is present when the trier of fact could resolve it in favor of either party.[34] When

---

[29]*See* First Amended Petition at 10-11, ¶¶15, 18, 20, 25, Docket No. 4.

[30]*See* Plaintiff's Motion at 5, Docket No. 136. Plaintiff offers no specific legal argument on the separate breach claim in his Motion or Reply, instead focusing on the allegations of bad faith. Plaintiff states only that "[b]ecause failure to pay was also a breach of the insurance contract, Mr. Higgins is also entitled to summary judgment on his claim for breach of contract." Plaintiff's Motion at 28, Docket No. 136. Extended argument regarding the breach claim is found in Plaintiff's Response to Defendant's Motion for Summary Judgment. *See* Plaintiff's Response at 27-30, Docket No. 200.

[31]Defendant's Motion at 13, 22, 25, Docket No. 137.

[32]Plaintiff's Response at 29, Docket No. 200.

[33]*See Jennings v. Badget*, 2010 OK 7, ¶¶ 4-5, 230 P.3d 861, 864; Fed. R. Civ. P. 56©.

[34]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

determining issues of law in a diversity action, this Court has an obligation to apply Oklahoma law as announced by the highest court of the state.[35] In the absence of an authoritative pronouncement, federal courts, sitting in diversity, must predict how Oklahoma's highest court would rule, following "any intermediate state court decision unless other authority convinces [this Court] that the state supreme court would decide otherwise."[36]

**B. Bad Faith**

Both parties seek summary judgment as to all of Plaintiff's multiple allegations of bad faith. The Court addresses each allegation in turn. It is important to note that, in an action for bad faith, "[a]n insurer is entitled to have any dispute concurring the reasonableness of its actions settled by a jury."[37] "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case."[38]

1. Subrogation Waiver Dispute

Throughout his pleadings, Plaintiff alleges that Defendant's representative intentionally delayed and deceived Plaintiff with regard to Defendant's subrogation waiver in an attempt to make Plaintiff settle with the tortfeasor's insurer without the waiver.[39] Plaintiff is correct in asserting that

---

[35] *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

[36] *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984).

[37] *Newport v. USAA,* 2000 OK 59, ¶11, 11 P.3d 190, 195.

[38] *Id.* (*internal quotations omitted*) (*quoting McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶21, 637 P.2d 583, 587).

[39] *See e.g.*, Petition at 4, ¶8, Docket No. 4; Plaintiff's Motion at 9, ¶34; 11, 20-21, Docket No. 136.

failure to obtain such a waiver before accepting settlement from the tortfeasor would destroy Plaintiff's right to recover under the Policy.[40] Therefore any evidence of deception may point to a triable issue of bad faith. However, rather than evidencing an effort to deceive, the uncontroverted record reflects that the improper instructions by Defendant's representative regarding the subrogation waiver were the result of general incompetence.[41] Further, the waiver of subrogation was delivered to Plaintiff within the 60-day time frame mandated by Oklahoma State title 36, §3636(F)(2), and did not ultimately impact Plaintiff's claim.[42] For these reasons, the Court finds that no reasonable jury could find Defendant's actions regarding the waiver of subrogation constituted bad faith. Plaintiff's Motion for Partial Summary Judgment on this issue is **DENIED**, Defendant's Motion for Summary Judgment on this issue is **GRANTED**.

2. Delay in Revealing Policy Limits

Plaintiff's claim that Defendant failed to reveal the Policy limits is without merit. The record is replete with references to the individual Policy limit beginning as early as December 14, 2009. For example, on December 14, 2009, Defendant mailed a letter responsive to a December 7, 2009

---

[40]*See* Oklahoma Uninsured Motorists Coverage at 12-13, ¶¶2-3, Docket No. 138-1 (outlining duties related to subrogation).

[41]The Court cites to the record as cited by the Plaintiff and uncontroverted by the Defendant. *See* Plaintiff's Motion at 9, Docket No. 138 (*citing* Higgins Deposition at 18 (94:13-17), Docket No. 138-27 ("I don't know what [a waiver of subrogation] is, but just go get the check"); Bengstrom Deposition at 31 (62:6-10); 35-36 (66:24-67:9), Docket No. 138-7 (representative admitting he did not understand subrogation, was not qualified to handle UIM claims); State Farm Log at 1, Docket 138-28 (State Farm agent explained what "waiver of subro" was to Defendant's representative).

[42]*Cf. Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1225 (10th Cir. 2001) ("The purpose of [§3636(E), now §3636(F)'s] notice requirement is to trigger the speedy payment mechanism and to enable the insurer to protect any subrogation rights it may wish to preserve-not to serve as a hurdle for recovery").

7

inquiry letter from Attorney Sullivent.[43] That letter states: "This policy has a $2,000 medical payments benefit as well as BI/PD-single limits in the amount of 1,000,000.00."[44]

Further, in two faxes dated December 9, 2010, Sullivent recognized that Defendant had previously informed him of the $1,000,000 limits.[45] The Policy's limit of $1,000,000 is also clearly listed on the UIM policy form to which Plaintiff, as Chief Operating Officer of Empire Plumbing, had at least some access.[46] Based on this evidence, no reasonable jury could conclude that Defendant delayed in revealing the Policy's individual limits. Because there is no evidence of delay, the Court need not address Plaintiff's argument that the purported delay in the disclosure of policy limits was a violation of the Oklahoma Unfair Claims Settlement Practices Act and therefore evidence of bad faith.[47] Plaintiff's Motion for Partial Summary Judgment as to this issue is **DENIED**, Defendant's Motion for Summary Judgment on this issue is **GRANTED**.

Plaintiff's supplemental allegation, that Defendant acted in bad faith by withholding the fact that Plaintiff could stack the coverage of the multiple vehicles under Policy, is similarly

---

[43]Letter at 20, Docket 137-2.

[44]*Id.*

[45]Faxes at 15-17, Docket No. 137-1 ("[B]ased upon your assertions that the policy limits are $1,000,000, and in light of Mr. Higgins' known medical bills, known injuries, previous surgeries, planned surgery, and lost wages, we would demand the payment of those policy limits"; "You indicated policy limits are $1,000.000. I would appreciate it if you would provide a certified copy of the declarations page to show that the insurance limits available to my client are in fact $1,000,000").

[46]*See* Oklahoma Uninsured Motorists Coverage Form at 11, Docket 138-1; Beakey Deposition at 8 (74:2-9).

[47]*See* Plaintiff's Motion at 17-19, Docket No. 138.

unfounded.[48] From the supplemental briefing it is apparent that Plaintiff conflates the Policy term "Named Insured" with who is generally "insured" under the Policy.[49] This distinction is clear on the face of the Policy.

As a matter of Oklahoma law, only named insureds and resident relatives of those named insureds may stack UIM coverage.[50] The Oklahoma Supreme Court has held time and again that "those qualifying as insured because of occupancy or of permissive use do not qualify as insureds beyond the policy covering the vehicle in which they are riding when they are injured by an uninsured motorist."[51] Plaintiff was named as "insured" under the Policy only by virtue of his being a named a permissive user in the schedule of covered autos and because he was "occupying" a "covered auto" at the time of the accident.[52] He was not the "Named Insured," as listed in the Policy declarations.[53] Consequently, Plaintiff is not entitled to stack UIM coverage under Oklahoma law.

Furthermore, the Policy language clearly states that only the "Named Insured" would contractually be permitted to stack coverage.[54] This limitation is reiterated by the Policy language

---

[48]*See* Plaintiff's Supplemental Brief in Support of Summary Judgment at 9, Docket No. 255.

[49]*See id.* at 3.

[50]*Rogers v. Goad*, 1987 OK 59, ¶6, 739 P.2d 519, 522. *See also* Stanton v. American Mut. Liability Ins. Co., 1987 OK 118, ¶ 747 P.2d 945, 946; *Aetna Cas. and Sur. Co. v. Craig*, 1989 OK 43, ¶6,  771 P.2d 212, 214*; American Economy Ins. Co. v. Bogdahn* 2004 OK 9, ¶16, 89 P.3d 1051, 1055.

[51]*Id.*

[52]*See* Schedule of Coverages and Covered Autos at 3, Docket No. 138-1.

[53]*See* Business Auto Common Policy Declarations at 1, Docket No. 138-1.

[54]*See* Oklahoma Uninsured Motorists Coverage Form § D(1)(a), at 12, Docket 138-1 ("The most we will pay for all damages sustained in such 'accident' by an 'insured' other than

preceding the list of drivers, the only section of the Policy that actually references the Plaintiff. This language states specifically: "All drivers, both principal and occasional, should be listed. *This list is for underwriting purposes only and does not grant insured status or coverage*."[55] As such, the Court finds that the Policy specifically prohibits Plaintiff from stacking the coverage of the multiple vehicles covered by the Policy. As Plaintiff is not entitled to stack coverage under the Policy, Plaintiff's suggestion that Defendant acted in bad faith by withholding the stacking issue is without merit.

3. Unreasonable Delay of Payment

Plaintiff further alleges that Defendant unreasonably delayed payment of UIM benefits, including partial payment of medical expenses arising from the accident. The partial payment issue turns on the Oklahoma Supreme Court's recent decision in *Government Employees Insurance Company v. Quine*.[56] In *Quine*, the Oklahoma Supreme Court, answering a certified question of law from the Western District of Oklahoma, cites favorably multiple jurisdictions that generally do not impose bad faith liability on insurers that fail to make partial payment of UIM claims.[57] A plain reading indicates the Oklahoma court concurs with this assessment.[58]

However, in the next paragraph, the court seemingly allows for an exception to this general

---

an individual Named Insured or any 'family member' is that 'Insured's' pro rata share of the limit shown in the Schedule or Declarations applicable to the vehicle that 'insured' was 'occupying' at the time of the 'accident'").

[55]Schedule of Coverages and Covered Autos at 3, Docket No. 138-1 (*emphasis added*).

[56]*GEICO v. Quine,* 2011 OK 88, 264 P.3d 1245.

[57]*Id.* at 1250, n.8.

[58]*Id.*("Other jurisdictions have *likewise* declined to impose liability on an insurer for failing to make partial or advance payment of UIM or UM claims") (*emphasis added*).

rule, opining that the case in *Quine* "presents a scenario far different than one involving a request for partial payment needed to satisfy unpaid medical expenses, lost wages, or other economic/special damages - cases where the impact of the loss is direct, immediate, and measurable with reasonable certainty."[59] It is this language that Plaintiff points to in support of his position.

The holding of *Quine* states that when an insured's economic losses are covered by the amount of the liability policy, if after a prompt investigation there is a legitimate dispute as to those damages, it is not bad faith to withhold partial payment on any remaining claim for general damages, so long as the benefits due and payable have not been firmly established by either an agreement of the parties or the entry of a judgment.[60] The "different scenario" language in *Quine* suggests an exception to this general rule against partial payment on disputed UIM claims, an exception that arises only in claims for immediate economic damages above and beyond the amount of liability damages. Essentially, *obiter dictum* in *Quine* implies that it *may* be bad faith to withhold partial payment of UIM benefits for immediate economic damages not covered by the tortfeasor's liability policy.[61]

Assuming, *arguendo*, that the Court accepts the *dicta* in *Quine* as a statement of settled Oklahoma law, it cannot resolve the instant dispute. The *Quine* opinion was issued on October 25,

---

[59]*Id.* at 1250.

[60]*Id.*

[61]*Id. See also Tran v. Nationwide Mut. Ins. Co.*, 2012 WL 380359 (N.D. Okla. Feb. 6, 2012) ("While there is *dicta* in *Quine* suggesting that a refusal to issue an unconditional advance payment to cover medical bills where the tortfeasor has no insurance may be more likely to constitute bad faith than the factual scenario in *Quine*, *Quine* does not hold that such failure is *per se* bad faith").

2011, over ten months after the filing of the instant litigation.[62] "For bad faith liability to attach, the law at the time of the alleged bad faith must be settled."[63] The fact that the *Quine* opinion arose from a certified question of law indicates that Oklahoma law regarding partial payments of UIM benefits was unsettled prior to the Oklahoma Supreme Court's decision, and therefore was unsettled at time of the alleged bad faith. Consequently, Defendant cannot be held responsible for its delay of a partial payment based upon any new rule or principal of law announced in *Quine* if its position on that unsettled question was reasonable.

After thorough review of the record before it, including the evidence supporting Plaintiff's claims of immediate economic damages, this Court concludes that Plaintiff's actions with respect to partial payment were indeed reasonable in light of the still unsettled legal issue alluded to in the *Quine dicta*. Regardless of *Quine*'s ultimate interpretation, Defendant's failure to make a partial payment cannot constitute bad faith because Defendant's legal position was reasonable in light of the lack of legal clarity with respect to any partial payment requirement. As to the narrow issue of whether or not Defendant acted in bad faith for denying Plaintiff partial payment under the *Quine* exception, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment on this issue is **GRANTED**.

To the extent that Plaintiff alleges Defendant otherwise unreasonably delayed payment of UIM benefits, both sides present conflicting evidence from which different inferences may be drawn regarding the reasonableness of Defendant's conduct. This includes evidence regarding Defendant's

---

[62]*Id.* at 1245.

[63]*Davis v. Mid-Century Ins. Co.*, 311 F.3d 1250, 1252 (10thCir.2002) (*citing Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶19, 998 P.2d 1219, 1223.

investigation discussed *infra*. There is also a triable issue regarding whether or not Defendant's dispute over the total claim amount was in fact legitimate and therefore, whether or not Defendant's delay of payment for over two years was reasonable. As such, the Court finds that there remain triable issues of fact regarding the reasonableness of Defendant's delay of full payment of UIM benefits.[64] On this issue, the Court specifically rejects Plaintiff's contention that the reserve or "set-aside" amount calculated by Defendant in September of 2010 reflects an "undisputed" amount of benefits due under the Policy.[65]

4. Failure to Investigate or Evaluate

Plaintiff alleges that Defendant breached the duty of good faith by failing to properly investigate or evaluate his claim in a timely manner. At the heart of this issue is the continuing dispute over whether or not Attorney Sullivent provided, or was even required to provide, ongoing medical records, and whether or not Sullivent ever requested an undisputed amount of damages due his client.[66]

It is true that "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith."[67] "[W]hen a bad faith claim is premised on inadequate investigation, the insured must make a showing that material facts were overlooked

---

[64] *Newport,* 11 P.3d at 195 ("[W]hat is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case") (*internal quotations omitted*) (*quoting McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶21, 637 P.2d 583, 587).

[65] Plaintiff's Motion at 28, Docket No. 138. *See Quine* 264 P.3d at 1250, n.8 ("settlement offers or reserves set aside for insureds' claims do not equate to 'undisputed amounts' of benefits due under a policy") (*citing Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 887 (Pa.Super.Ct.2000)).

[66]*See* Defendant's Response at 26, Docket No. 202.

[67]*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir.1993).

or that a more thorough investigation would have produced relevant information."[68]

Here, there remain disputed questions of fact regarding (1) Defendant's use of Plaintiff's medical authorization; (2) Attorney Sullivent's representations regarding medical bill production; (3) and the general thoroughness of Defendant's investigation, that preclude summary judgment on this issue. Further, because Defendant argues its delay in evaluating Plaintiff's claim was due to lack of requested documentation, the issue of failure to investigate is inextricably linked to Plaintiff's allegations that Defendant unreasonably failed to timely evaluate his claim. For these reasons, both parties' motions for summary judgment on the issue of failure to investigate and/or evaluate are **DENIED**.

## C. Breach of Contract

As to Plaintiff's claim regarding breach of the insurance contract, there remain material disputes over what is owed to Plaintiff under the contract and whether or not Plaintiff committed material misrepresentations which would void the Policy. The Court finds that, based on the record before it, reasonable minds could differ on both of these questions.[69] The Parties' Motions for Summary Judgment as to the allegation of Breach of Contract are **DENIED**.

## D. Damages

The parties disagree over whether Plaintiff suffered any actual damages as a result of Defendant's alleged bad faith, and whether or not Plaintiff is entitled to punitive damages. According to Plaintiff, Plaintiff's actual damages consist of loss of reputation and emotional distress

---

[68] *Timberlake*, 71 F.3d at 345.

[69] *See Long v. Insurance Co. of North America*, 670 F.2d 930, 934 (10th Cir.1982) ("materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question").

he suffered as a result of Defendant's alleged bad faith.[70] Oklahoma law permits bad faith damages for "financial loss, embarrassment and loss of reputation, and mental pain and suffering."[71] The Court finds that from the record, a reasonable jury could conclude that, at a minimum, Plaintiff suffered some embarrassment and/or mental pain and suffering as a result of Defendant's alleged bad faith conduct in this case. To the extent that Plaintiff intends to pursue claims of financial losses, the evidence with respect to those losses remains much in dispute.

With regard to punitive damages, an insurer may be subjected to punitive damages for breach of its duty to deal fairly and in good faith with its insured only if a jury finds by clear and convincing evidence that the insurer's breach was either reckless, or intentional and with malice.[72] Plaintiff's claim for punitive damages rests solely on his allegations that Defendant intentionally misled Plaintiff with regard to the waiver of subrogation and maliciously concealed the Policy limit with the intent to avoid payment of Plaintiff's claim.[73] As the Court has granted summary judgment to Defendant on both of these issues; no reasonable jury could find Defendant's conduct either reckless or intentional and malicious; and summary judgment on the issue of punitive damages is appropriate. Defendant's Motion for Summary Judgment on the issue of Punitive Damages is **GRANTED**.

## CONCLUSION

For the reasons detailed herein, Plaintiff's Motion for Partial Summary Judgment is

---

[70]Plaintiff's Response at 22-23, Docket No. 200.

[71]*See* OUJI-CIV 22.4.

[72] Okla. Stat. tit. 23, §9.1(B)(2), (C)(2), (D)(2).

[73]Plaintiff's Response at 23-26, Docket No. 200.

**DENIED**.[74] Defendant's Motion for Summary Judgment is **GRANTED IN PART**, **DENIED IN PART** as discussed above.[75]

                                                                  *[signature]*
                                                        James H. Payne
                                                        United States District Judge
                                                        Northern District of Oklahoma

---

[74] Docket No. 138.

[75] Docket No. 137.