**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BLAKE HIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-90-JHP-TLW |
| | ) | |
| STATE AUTO PROPERTY & | ) | |
| CASUALTY INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER[1]

Before the Court are Plaintiff's Motion to Alter or Amend Judgment and Brief in Support,[2] Defendant's Response to Plaintiff's Motion to Alter or Amend Judgment,[3] and Plaintiff's Reply to Defendant's Response to Motion to Alter or Amend Judgment.[4] For the reasons cited herein, Plaintiff's Motion to Alter or Amend Judgment is **DENIED**.

## DISCUSSION

Plaintiff brings the instant Motion to Alter or Amend Judgment asking the Court to review its ruling on the parties' motions for summary judgment. Plaintiff begins by stating that the Court made a clear error of law by determining that Defendant's "denying payment of the undisputed amount could not have been bad faith."[5] In doing so, Plaintiff attacks the Court's statement that

---

[1]Page number citations in this Opinion and Order refer to the CM/ECF pagination.

[2]Docket No. 303.

[3]Docket No. 311.

[4]Docket No. 313.

[5]Plaintiff's Motion to Alter or Amend the Judgment and Brief in Support at 2, Docket No. 303.

1

Defendant's actions were reasonable in light of the lack of legal clarity regarding any duty by an insurer to make partial payments of Uninsured/Underinsured Motorist (UIM) claims in the wake of *GEICO v. Quine*.[6] Plaintiff's Motion frequently mischaracterizes the Court's Opinion, describing the Court's rejection of any duty of an insurer to make partial payments on specific amounts Plaintiff perceived to be undisputed, as a finding that Defendant's actions in "denying payment of [an] undisputed amount" was reasonable.

The Court's ruling largely dealt with whether Oklahoma law recognizes a duty to make partial payments. The Opinion primarily addressed an issue raised by the parties with respect to *dicta* in *Quine* that appeared to set forth "an exception to [the] general rule against partial payment on disputed UIM claims" with respect to unpaid, immediate, economic damages.[7] The Court declared any such exception inapplicable in this matter.[8] This Court's ruling found that, to the extent *Quine* stated it was more likely to constitute bad faith if an insurer withheld partial payment on disputed claims involving otherwise unpaid, immediate, economic damages, such a statement was not applicable to Defendant, because Defendant's conduct occurred before any announcement in *Quine*.[9]

Plaintiff's citation to the unpublished decision in *Hatfield v. Liberty Mutual Insurance Company* is unhelpful, as the question of law from *Quine* centers on the unclear *dicta* implying it may constitute bad faith to withhold partial payment on claims of unpaid, immediate, economic

---

[6]*Id.* at 2.

[7]*Id.* at 11-12.

[8]*Id.* at 12.

[9]Opinion and Order at 12, Docket No. 288.

2

damages in cases where there was otherwise a dispute as to general damages.[10] This is a wholly new concept that runs counter to the clear weight of Oklahoma law, including a previous Oklahoma court ruling that failure to make a partial payment is not bad faith in claims where there is a legitimate dispute.[11] As the statement in *Quine* is *dicta*, and purports to alter settled law, Defendant cannot be held accountable for this *potential* shift in Oklahoma law that occurred subsequent to the bulk of Defendant's alleged bad faith conduct. Because of this, the Court found Defendant's actions reasonable with regard to any unsettled law on a duty to make partial payments that may or may not have been announced in *Quine*.[12]

If the possible exception in *Quine* regarding unpaid, immediate, economic damages is inapplicable, then the Court must apply the general rule cited in *Quine* that militates against finding bad faith liability for an insurer's failure to render a partial payment in a disputed UIM case.[13]

---

[10]*See* Plaintiff's Motion to Alter or Amend Judgment at 1-2, Docket 303 (*citing Hatfield*, 98 Fed.Appx 789 (10th Cir.2004)

[11]*See Garnett v. GEICO*, 2008 OK 43,¶ 23, 186 P.3d 935, 944 (holding because a legitimate dispute existed as to total amount of insured's UIM claim, trial court did not error in granting summary judgment to insurer on issue of whether insurer's failure to tender an alleged "undisputed amount" constituted bad faith).

[12]Opinion and Order at 12, Docket No. 288 ("Defendant's failure to make a partial payment cannot constitute bad faith because Defendant's legal position was reasonable in light of the lack of legal clarity with respect to any partial payment requirement."). This ruling is not groundbreaking. This Court has previously found that the *Quine* does not hold that failure to render partial payment of unpaid, immediate, economic damages is *per se* bad faith. *Tran v. Nationwide Mut. Ins. Co.*, 2012 WL 380359 (N.D. Okla. Feb. 6, 2012) ("While there is *dicta* in *Quine* suggesting that a refusal to issue an unconditional advance payment to cover medical bills where the tortfeasor has no insurance may be more likely to constitute bad faith than the factual scenario in *Quine*, *Quine* does not hold that such failure is *per se* bad faith").

[13]Opinion and Order at 10, Docket No. 288 (*citing Quine*, 264 P.3d. at 1250, n.8 (stating that "[o]ther jurisdictions have *likewise* declined to impose liability on an insurer for failing to make partial or advance payment of UIM or UM claims") (*citing favorably Zappile v. Amex Assur. Co.*, 928 A.2d 251, 257 (Pa.Super.Ct.2007) (Pennsylvania law does not require insurers to

Implicit in the Court's Opinion in granting Defendant judgment on the partial payment issue was a finding that there was a legitimate dispute of Plaintiff's claim.[14] The fact that Plaintiff sought partial payment of what he perceived to be an "undisputed" portion of damages belies the fact that there was at some point an accepted dispute as to the value of Plaintiff's claim. Review of the record confirms that there was in fact a dispute as to the extent of Plaintiff's damages, and there remains a dispute as to whether there has ever been submitted an undisputed amount of damages that required payment.[15] Unlike the factual scenario from *Hatfield* cited by Plaintiff, nothing in this record indicates there was ever a clear, agreed amount of damages Plaintiff was due on his claim.[16]

Because the *Quine dicta*'s possible exception is inapplicable here, the fact that there existed a dispute as to the value of Plaintiff's claim ultimately vitiates any possibility that this Defendant's failure to render partial payment could reasonably be considered tortious under Oklahoma law.[17] As

---

engage in piecemeal settlement through partial payment of lost wage component of UIM claim)).

[14]*Id.* at 11-12 (contrasting general rule against a duty to make partial payment in disputed UIM claims with potential exception in *Quine,* finding exception inapplicable, finding Defendant's conduct reasonable with regard to unsettled law from *Quine*, therefore implicitly finding Defendant conduct reasonable with regard to settled law on partial payments).

[15]*See, e.g,* Defendant's Response to Plaintiff's Motion for Partial Summary Judgment at 26-27, Docket No. 202 (citing, among other things, continued disagreement over whether or not Attorney Sullivent provided, or was even required to provide, ongoing medical records, and whether or not Sullivent ever requested an undisputed amount due his client).

[16]*See* Plaintiff's Reply to Defendant's Response to Motion to Alter or Amend Judgment at 2-3, Docket No. 313. In *Hatfield*, the total claim amount of the primary coverage was undisputed. At issue was whether or not the insured could stack coverages for the insured's multiple vehicles. The court found that the insurer in *Hatfield* acted in bad faith when it required a release of Plaintiff's claim for the stacking issue before paying the clam he was undisputedly entitled to under the primary policy. *See Hatfield*, 98 Fed.Appx 789, 793-94 (10th Cir.2004). The factual scenario in *Hatfield* is inapposite to the instant facts.

[17]*See Garnett v. GEICO*, 2008 OK 43, ¶22, 186 P.3d 935, 944 ("Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a

4

such, the Court must grant Defendant summary judgment on the issue of whether it was bad faith for Defendant to delay partial payments, and any mention of either a legal or moral duty of Defendant to make a partial payment should not be brought to the attention of the jury.

However, contrary to the assertion in the instant Motion, the Court's Opinion did not generally find that Defendant denying (or delaying) payment of an undisputed amount could not have been bad faith. The Court merely found that, under the circumstances of this case, denial of any partial payment of perceived "undisputed amounts" could not reasonably be considered bad faith. Nonetheless, the presence of a legitimate dispute in this litigation does not necessarily end the Court's bad faith inquiry as to delay of swift payment in general, but shifts the burden to Plaintiff to present additional evidence of bad faith to maintain the claim.[18] Plaintiff does so.

In this case, Plaintiff offers medical bills and other evidence that calls into question Defendant's reasonableness with respect to the over two-year dispute. This issue is directly related to disputed questions of fact related to whether Defendant's dispute as to the total value of Plaintiff's claim remained legitimate throughout the lengthy investigation and evaluation process. Consequently, there remain triable issues as to Defendant's reasonableness with respect to delay in paying Plaintiff's claim. The resolution of these issues is inextricably intertwined with resolving the disputed questions of material fact as to the reasonableness of Defendant's conduct in its handling, investigation, and evaluation of Plaintiff's claim. All of these issues require jury consideration.[19]

---

matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious").

[18] *See Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 891(10th Cir.2006).

[19] *Newport v. USAA,* 2000 OK 59, ¶11, 11 P.3d 190, 195 ("[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a

This matter was addressed by the Court in its Opinion:

> To the extent that Plaintiff alleges Defendant otherwise unreasonably delayed payment of UIM benefits, both sides present conflicting evidence from which different inferences may be drawn regarding the reasonableness of Defendant's conduct. This includes evidence regarding Defendant's investigation discussed *infra*. There is also a triable issue regarding whether or not Defendant's dispute over the total claim amount was in fact legitimate and therefore, whether or not Defendant's delay of payment for over two years was reasonable.[20]

The question of delay of swift, full payment of Plaintiff's claim remains at issue. Because there is a question of the reasonableness of Defendant's extended delay of full payment of undisputed damages, that delay remains an issue for the jury.[21] Insofar as the Court's Order and Opinion on summary judgment may have been unclear on this matter, this Opinion and Order serves to clarify the findings of this Court.

In his second proposition in error, Plaintiff contends that this Court "misapprehended the facts" when the Court granted Defendant summary judgment on Plaintiff's allegations that Defendant delayed revealing the uninsured motorist policy limits.[22] In support of his position that the Court was mistaken, Plaintiff alleges that the only evidence cited by the Court "is a letter of a State Auto representative that states: 'This policy has a $2,000 medical payments benefit as well as BI/PD-single limits in the amount of 1,000,000.00,'"[23] and further offers other points in the record,

---

consideration of the circumstances in each case") (*internal quotations omitted*) (*quoting McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶21, 637 P.2d 583, 587).

[20] Opinion and Order at 12, Docket No. 88.

[21] *Newport v. USAA,* 2000 OK 59, ¶11, 11 P.3d 190, 195 (*internal quotations omitted*) (*quoting McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶21, 637 P.2d 583, 587).

[22] Motion to Alter or Amend at 3, Docket No. 303.

[23] *Id.*

6

including deposition testimony of the letter writer and his supervisor, that state that this letter did not reference UIM policy limits.[24]

The Court first notes that Plaintiff offers little argument for his contention that delay in revealing policy limits, in and of itself, constitutes bad faith. Plaintiff's primary argument was that Defendant's alleged delay was a violation of the Oklahoma Unfair Claims Settlement Practices Act (the Act), and therefore "fundamental bad faith."[25] Whether the alleged delay in this case even constituted a violation of the Act is heavily disputed. In contending that Defendant's alleged delay constitutes evidence of bad faith, Plaintiff misstates that the Act requires full disclosure of an insured's coverage in all instances.[26] The language of the Act states:

> Any of the following acts by an insurer, if committed in violation of Section 1250.3 of this title, constitutes an unfair claim settlement practice [ ]:
> 1. Failing to fully disclose to first party claimants, benefits, coverages, or other provisions of any insurance policy or insurance contract *when the benefits, coverages or other provisions are pertinent to a claim*;[27]

From the plain language of the Act it is clear that the duty to disclose only arises when the coverage is "pertinent to the claim." Plaintiff offers little argument that policy limits were pertinent to his claim or that there has been a limits-related issue in this claim.[28] In fact, one of Defendant's representatives has stated he did not reveal the limits because he felt there were no limits-related

---

[24]*Id.* at 3-4.

[25]See Plaintiff's Motion for Partial Summary Judgment at 17-18, Docket No. 138

[26]*Id.*

[27]36 Okla. Stat. tit. §1250.5(1).

[28]Plaintiff's attempt to raise a limits related issue was denied by this Court in the Opinion and Order at issue in this Motion. *See* Opinion and Order at 10, Docket No. 288 (denying Plaintiff's late-litigation claim that law or the Policy permitted Plaintiff to stack coverages to increase policy limits).

7

issues.²⁹ This certainly casts some doubt on Plaintiff's assertion that Defendant's alleged conduct with regard to revealing the Policy's limits was a violation of the Act and therefore evidence of bad faith.

Furthermore, although representative of the evidence cited in the Court's Opinion, Plaintiff's characterization of the Court's Opinion does not represent all the evidence the Court used in coming to its decision. From the outset of its Opinion on the matter, the Court notes: "The record is replete with references to the individual Policy limit."³⁰ The letter cited in the Court's Opinion and referenced by Plaintiff in the instant Motion was but one piece of evidence considered by the Court in coming to its Opinion. The Court recites further evidence here in reiterating its ruling to the parties.

The Court first notes that Plaintiff's counsel Sullivent references the $1,000,000.00 Policy limits before the December 14, 2009 letter cited by the Court, in his December 7, 2009 request for information letter.³¹ In fact, The December 14, 2009 response letter cited in the Court's Opinion was a direct, almost point-for-point, response to Sullivent's December 7th letter, which itself was a pointed request for information on med-pay limits and *confirmation* of UIM limits.³² Defendant's December 14th response letter gave the exact figures for the limits requested by Sullivent, despite

---

²⁹Claims file SA 0015 at 15, Docket No. 138-6 ("I did not share the limits, but advised that I do not feel there will be a limits-related issue).

³⁰Opinion and Order at 7, Docket No. 288.

³¹*See* Letter at 17, Docket No. 202-5 (asking Defendant to confirm $1,000,000.00 Policy limits).

³²*Id.*

8

its reference to "BI/PD limits."[33]

Other evidence reviewed by the Court, includes, but is not limited to: (1) Sullivent's frequent demands for statements and or certified copies of the limits;[34] (2) Sullivent's subsequent demands for partial payments in excess of $400,000;[35] and (3) evidence regarding Plaintiff's attendance at post-accident meetings about Plaintiff's claim held by Plaintiff's employer.[36] All of this indicates to the Court that Plaintiff had some prior access to the policy information and had actual knowledge of the Policy's limits. The Court's review *of the entire record* led to its conclusion that, regardless of when Defendant's representatives uttered the words: "the UIM policy benefits are $1,000,000.00," Plaintiff already knew those limits.

Although Plaintiff points to multiple instances where Sullivent asked and was allegedly refused information concerning Policy limits, many of these demands do not ask for information, but rather seek a formal statement of coverage.[37] This does not support Plaintiff's contention that

---

[33]The discrepancy here could easily be a typographical error considering that the letter's author, George J. Gartelos, generally worked bodily injury claims. *See* Deposition of Jerry Lewis at 3, 31:8-18, Docket No. 233-4. At his deposition, Mr. Gartelos plainly stated that the UIM was not listed in this letter because, plainly, it was not. *See* Deposition of George Gartelos at 17, 80:1-13, Docket 138-25. The Court did not use this opinion of these facts in its decision-making, as the parties either did not examine this issue further, or failed to include it in their deposition excerpts.

[34]*See, e.g.,* Letter at 14, Docket No. 137-2; note 34, *infra.*

[35]Letter at 15, Docket No. 137-1.

[36]The record clearly shows Plaintiff attended a meeting regarding his claim shortly after the accident at which the insurance policy was present. *See* Deposition of Blake Higgins at 4-5, Docket No. 202-1. Although Plaintiff goes on to allege he was not told the Policy limits at that meeting, Sullivent's December 9, 2009 letter asks to "confirm" these limits, evidencing that Sullivent had knowledge of the limits from some source.

[37]*See, e.g.,* Letter at 14, Docket No. 137-2 ("We also make a request to obtain a statement from you as to how much coverage is available for Mr. Higgins and request a certified

9

Defendant was intentionally withholding the amount of the limits, merely that they were not providing formal statements of coverage. The deposition excerpts offered by the Plaintiff referencing the plain text of the letter cited by the Court's Opinion paint a stilted picture and do little to alter the Court's opinion on this matter.[38]

The Court has found Plaintiff's Attorney Sullivent had actual knowledge of the Policy limits in this matter prior to any inquiry. If Plaintiff's counsel had actual knowledge of the limits of the Policy, Defendant cannot be faulted for any delay in "revealing" those limits. To the extent that the Court did not provide the full rationale for its ruling, it offers it now. The allegation is without merit. Further, presenting the evidence regarding any alleged delay would only create confusion for the jury as to the issues before them and would likely be more prejudicial than probative. Plaintiff may not present evidence or testimony regarding Defendant's alleged delay in revealing the Policy limits as evidence of Defendant's bad faith.

With regard to punitive damages, in addition to contending that Defendant's alleged reckless or intentional attempt to conceal the Policy limits should still be at issue, Plaintiff attacks the Court's finding that "Plaintiff's claim for punitive damages rests solely on his allegations that Defendant intentionally misled Plaintiff with regard to the waiver of subrogation and maliciously concealed

---

copy of the Declarations page verifying those amounts"); Fax at 16, Docket No. 137-1 ("We would also request a statement from you as to how much coverage is available for Mr. Higgins, and request a certified copy of the Declarations page verifying those amounts"); Faxes at 15, Docket No. 137-1 ("You indicated policy limits are $1,000.000. I would appreciate it if you would provide a certified copy of the declarations page to show that the insurance limits available to my client are in fact $1,000,000").

[38]*See* note 33, *supra*.

the Policy limit with the intent to avoid payment of Plaintiff's claim."[39] Plaintiff contends "Plaintiff's claim for *bad faith* rests upon much more than those two allegations."[40]

The statement in the Court's Opinion and Order, "Plaintiff's claim for punitive damages rests solely on . . . " was based on Plaintiff's Response to Defendant's Motion for Summary Judgment. The heading of Plaintiff's response to Defendant's Motion for Summary Judgment on the punitive damages issue read: "II. Evidence of State Auto's Concealment and Malice Requires a Jury Trial to Decide Punitive Damages."[41] The subheadings read: "A. Concealment of Mr. Higgins' Policy Limit" and "B. Malicious Attempt to Trick Mr. Higgins Into Forfeiting His Coverage."[42] Plaintiff's argument opposing Defendant's Motion for Summary judgement concludes with:

> In this case, the evidence of State Auto's intentional concealment of Mr. Higgins' policy limit, its malicious attempt to trick him into forfeiting his UIM claim, and its total disregard for Oklahoma law meets the standard of punitive conduct and should be submitted to the jury. State Auto's motion for summary judgment as to Mr. Higgins' claim for punitive damages should be denied.[43]

These two elements comprised Plaintiff's complete *argument* as to intentional or malicious, bad faith conduct by Defendant warranting punitive damages. In dismissing those two claims of bad faith, the Court necessarily granted summary judgment for Defendant on punitive damages as to

---

[39]Opinion and Order at 15, Docket No. 288 (*citing* Plaintiff's Response at 23-26, Docket No. 200).

[40]Plaintiff's Motion to Alter or Amend Judgment at 5, Docket No. 303.

[41]Plaintiff's Response to Defendant's Motion for Summary Judgment at 25, Docket No. 200.

[42]*Id.*

[43]*Id.* at 26.

11

those claims.[44] However, in his Motion to Alter or Amend Plaintiff argues that the following allegations from the conclusion of his own Motion for Partial Summary Judgment were incorporated by reference into his argument against Defendant's Motion for Summary Judgment:

> State Auto clearly did not provide a proper investigation, evaluation, and payment. But it is much more than that - State Auto intentionally treated Mr. Higgins unfairly and refused to deal with him in good faith.
>
> *and*
>
> State Auto has engaged in a deliberate course of conduct to conceal, delay, and refuse to pay what it owes Mr. Higgins.[45]

Plaintiff further contends that these statements amount to an allegation that Defendant acted intentionally that can survive summary judgment on the punitive damages issue.[46]

Although the additional allegations cited in Plaintiff's Motion to Alter or Amend are mere conclusory statements that would not normally defeat summary judgment, Plaintiff's argument that he has alleged other reckless and/or intentional and malicious acts is somewhat supported by the

---

[44]Opinion and Order at 15, Docket No. 288 ("As the Court has granted summary judgment to Defendant on both of these issues; no reasonable jury could find Defendant's conduct either reckless or intentional and malicious; and summary judgment on the issue of punitive damages is appropriate"). *Accord, Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 893 (10th Cir.2006) (stating that a "finding of punitive damages necessarily entails a finding of bad faith").

[45]Plaintiff's Motion to Alter or Amend Judgment at 5-6, Docket No. 303 (*citing* Plaintiff's Response to Defendant's Motion to Dismiss at 29, Docket No. 138.) Plaintiff cited his entire concluding paragraph in support of his contention that he had alleged other reckless or intentional acts that would support a punitive damages instruction. For brevity, the court included only those sections of the paragraph that alleged intentional, deliberate, reckless, or malicious action. Although Plaintiff contends these statements were incorporated by reference into his Response to Defendant's Motion for Summary Judgment, Plaintiff does not state where the other motion or its statements were referenced in his Response argument against summary judgment on the punitive damages issue.

[46]*Id.*

generally conclusory allegations in his First Amended Complaint.[47] As such, to the extent Plaintiff can introduce admissible evidence at trial that supports his conclusory allegations that Defendant acted either recklessly, or intentionally and maliciously, the Court will entertain motion and argument at the close of evidence on whether to instruct as to punitive damages.

## **CONCLUSION**

For the reasons cited herein, Plaintiff's Motion to Alter or Amend Judgment is **DENIED**.[48]

IT IS SO ORDERED, this 28th day of June, 2012.

*[signature: James H. Payne]*

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[47] *See* First Amended Petition at 11, Docket No. 4..

[48] The Court takes this opportunity to correct a typographical error in its Opinion and Order on Summary Judgment. At page 12, the Court stated: ". . . this Court concludes that Plaintiff's actions with respect to partial payment were indeed reasonable in light of the still unsettled legal issue alluded to in the *Quine dicta*." In this sentence, the word "Plaintiff's" should read "Defendant's." This was a typographical error and does not alter the Court's Opinion or Judgment.