# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BLAKE HIGGINS,           )
                                  )

Plaintiff,             )
                                  )

v.                        )        **11-CV-90-JHP-TLW**
                                  )

STATE AUTO PROPERTY &amp;     )
CASUALTY INSURANCE COMPANY   )
                                  )

Defendant.            )

## OPINION AND ORDER[1]

Before the Court are Plaintiff's First, Second, Third, Fourth, Fifth, Ninth, Tenth, Eleventh, and Twelfth Motions *in Limine*,[2] Defendant's Responses thereto,[3] and Plaintiff's Replies Regarding Defendant's Responses to Plaintiff's First, Second, Third, and Fourth Motions *in Limine*,[4] Defendant's Motion *in Limine* and Supporting Brief,[5] Plaintiff's Response to Defendant's Motion *in Limine*,[6] and Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion *in*

---

[1]Page number citations in this Opinion and Order refer to the CM/ECF pagination.

[2]Docket No.'s 141, 142, 143, 144, 145, 150, 151, 152, and 153. *Also* Errata Correction to Plaintiff's Fifth Motion *in Limine* at Docket No. 155.

[3]Docket No.'s 236, 237, 238, 239, 240, 244, 245, 246, and 247.

[4]Docket No.'s 292, 293, 294, 295, 296, and 297. Plaintiff did not file Replies regarding his Fifth, Ninth, Tenth, Eleventh, or Twelfth Motions *in Limine*.

[5]Docket No.'s 140, 154. *Also* Defendant's Errata/Correction of Docket No. 154 at Docket 157. Defendant entered an Errata/Correction to this Brief that altered the page numbering of its Motion. Throughout this Opinion and Order the Court references the Errata/Correction filing at Docket No. 157-1.

[6]Docket No. 249.

*Limine.*[7]

**DISCUSSION**

The parties in this action have filed multiple Motions *in Limine*. A motion *in limine* is a pretrial request for an evidentiary ruling.[8] When a motion *in limine* is (1) fairly presented to the Court, (2) upon an issue that can be finally decided before trial, and (3) is ruled upon without equivocation, the ruling may be treated as law of the case.[9] The Court addresses each of these issues as necessary with this Opinion and Order.

**A. Plaintiff's Motions *in Limine***

Plaintiff has filed 12 separate and distinct Motions *in Limine*, to which Defendant has responded. The Court has previously reviewed Plaintiff's Sixth Motion *in Limine* and defers Judgment on Plaintiff's Seventh and Eighth Motions *in Limine*.[10] Looking to each remaining Motion in turn:

<u>1. Plaintiff's First Motion *in Limine*</u>

Plaintiff's First Motion *in Limine* asks the Court to prohibit any reference to Plaintiff's non-use of a seatbelt at the time of the accident. Plaintiff contends that the 2005 Amendment to 47 Oklahoma State title §12-420 prohibits mention of the use or non-use of seat belts in Oklahoma civil actions. The pertinent part of that Amendment reads: "Nothing in Sections 12-416 through 12-420 of this title shall be used in any civil proceeding in this state and the use or nonuse of seat belts shall

---

[7]Docket No. 290.

[8]*United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir.1993).

[9]*Id*.

[10]*See* Docket No. 302.

not be submitted into evidence in any civil suit in Oklahoma."

Defendant argues that this law was changed on November 1, 2009, a little over one month after Plaintiff's accident. The changed law reads: "Sections 12-416 through 12-420 of this title may be used in any civil proceeding in this state and the use or nonuse of seat belts shall be submitted into evidence in any civil suit in Oklahoma unless the plaintiff in such suit is a child under sixteen (16) years of age."[11]

The 2009 Amendment to the law is not applicable in this case. Section 12-420 is a substantive change in the law.[12] Such substantive changes cannot be retroactively applied.[13] As the change in the law permitting introduction of seat belt evidence occurred after the accident at issue, it cannot be applied retroactively to evidence regarding Plaintiff's accident, therefore evidence regarding seat belt use cannot be offered to show that Plaintiff was at fault for the accident.

However, such evidence may be admitted for other purposes, for example, to evidence state of mind.[14] In this case, Defendant argues evidence regarding Plaintiff's non-use of a seat belt may be necessary for impeachment purposes.[15] As fault is not at issue in this case, and the evidence is generally admissible for at least one of Defendant's proposed purposes, Plaintiff's Motion *in Limine* for a blanket ban on seat belt references is **DENIED**. Plaintiff's objection to evidence of seat belt

---

[11]*See* 47 Okla. Stat. tit §12-420 (2009).

[12]*Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 881 (10th Cir.2006).

[13]*Sudbury v. Deterding*, 2001 OK 10, ¶19, 19 P.3d 856, 860.

[14]*See Sims*, 469 F.3d at 886 ("Because Great American introduced this evidence for purposes of showing Sims' state of mind, not to insinuate fault, we hold that Oklahoma's Mandatory Seat Belt Act is inapplicable to the present case, and the district court should have admitted this evidence at trial").

[15]*See* Defendant's Response to Plaintiff's First Motion *in Limine* at 3, Docket No. 236.

non-use may be reurged at trial if appropriate.

## 2. Plaintiff's Second Motion *in Limine*

Plaintiff's Second Motion *in Limine* asks this Court to exclude all references to payments from collateral insurance sources, including payment from the tortfeasor's insurance and payment by Plaintiff's health insurer. As a general rule, Plaintiff is correct that payment to Plaintiff from a source wholly independent of and not on behalf of the wrongdoer is inadmissible.[16] However, such evidence may be properly introduced to rebut any claims by Plaintiff of emotional and financial hardship due to the amount of unpaid medical bills.[17] Because that hardship is at issue, the Court will entertain argument as to the introduction of such evidence when appropriate at trial. Plaintiff's Second Motion *in Limine* is **DENIED**, but any objection may be reurged at trial if appropriate.

## 3. Plaintiff's Third Motion *in Limine*

Plaintiff's Third Motion *in Limine* seeks a broad ban on any evidence of Plaintiff's medical treatment that is unrelated to this suit. Plaintiff's Motion addresses issues regarding psoriasis and arthritis, conditions for which Plaintiff was treated prior to and after the accident. Records regarding these conditions may be relevant to this action, as some bills allegedly provided to the Defendant as evidence of loss were actually for these unrelated conditions.[18] Further, Plaintiff does not support his argument that he would suffer any undue prejudice based on the entry of this evidence. As such,

---

[16]*Worsham v. Nix*, 2006 OK 67, ¶53, 145 P.3d 1055, 1062 (*citing Denco Bus Lines, Inc. v. Hargis*, 1951 OK 11, 229 P.2d 560).

[17]*See Rucker v. Mid-Century Ins. Co.,* 1997 OK CIV APP 47, 945 P.2d 507, 510 (*citing Gladden v. P. Henderson & Co.*, 385 F.2d 480, 484 (3d Cir.1967) ("[T]he collateral benefit rule cannot be made a springboard from which a plaintiff may go forward with affirmative evidence that he returned to work while he was still ailing, because of financial need and then seek immunity from cross-examination regarding it").

[18]*See* Bills at 33-37, Docket No. 137-2.

the Court will not broadly prohibit mention of this evidence. Plaintiff's Third Motion *in Limine* is **DENIED,** but any objection may be reurged at trial if appropriate.

4. Plaintiff's Fourth Motion *in Limine*

Plaintiff's Fourth Motion *in Limine* seeks to bar any mention of Plaintiff's banking records, personal finances, or how he spent his money. Through his claims of financial distress and attendant emotional distress, Plaintiff has placed his personal finances squarely at issue in this case. Again, Plaintiff's Motion fails to argue how Plaintiff would be *unfairly* prejudiced by introduction of this evidence. Insofar as Defendant attempts to introduce evidence at trial that is wholly unrelated to Plaintiff's allegations or is unnecessarily cumulative, the Court will entertain objections at trial. Otherwise, Plaintiff's Fourth Motion *in Limine* is **DENIED**, but any objection may be reurged at trial if appropriate.

5. Plaintiff's Fifth Motion *in Limine*

Plaintiff's Fifth Motion *in Limine* seeks to bar any evidence related to the length of time it took Plaintiff to negotiate Defendant's January 25, 2012 check for $375,000. This Motion is discussed *infra* in the Court's review of Defendant's Objection Number 52 regarding the admissibility of the parties' post-litigation conduct.

6. Plaintiff's Ninth Motion *in Limine*

Plaintiff's Ninth Motion *in Limine* states as follows:

> Defendant has included, in its Exhibit List, Dkt. No. 74, "Itemization of medical bills for Plaintiff provided by Rich Toon." This itemization constitutes attorney work product and is improper for inclusion in Defendant's exhibit list. If the Defendant wishes to utilize an exhibit of medical bills, it should prepare its own document.

Essentially, Plaintiff argues that an itemized list of Plaintiff's medical bills provided by Plaintiff to Defendant during discovery cannot be used by Defendant as a trial exhibit. Plaintiff

makes no showing that the exhibit in question constitutes work product, does not claim that it was inadvertently disclosed, and offers no legal authority in support of his proposition that Defendant may not use the material at trial. Ultimately, the exhibit in question may be relevant for multiple reasons beyond its informational value, including but not limited to evidence of alleged reporting irregularities by Plaintiff. As such, the exhibit in question is likely admissible, subject to appropriate objection and argument at trial. Plaintiff's Ninth Motion *in Limine* is **DENIED**.

### 7. Plaintiff's Tenth Motion *in Limine*

Plaintiff's Tenth Motion *in Limine* seeks to bar inclusion of undisclosed representatives of State Auto. It is evident from Defendant's Response to this Motion that there are no testifying State Auto Representatives that remain unidentified.[19] Consequently, Palintiff's Tenth Motion *in Limine* is **DENIED AS MOOT**.

### 8. Plaintiff's Eleventh and Twelfth Motions *in Limine*

Both Plaintiff's Eleventh and Twelfth Motions *in Limine* concern evidence regarding Plaintiff's spending habits regarding purchases that could possibly be construed as extravagant. Plaintiff's spending habits are at issue in this case insofar as Plaintiff continues to claim he suffered financial hardship and attendant emotional distress as a result of unpaid medical bills. Plaintiff fails to demonstrate in either Motion how he would be *unfairly* prejudiced by introduction of this evidence.

The actual impetus for the Motions, Plaintiff's concern that "Defendant may try to suggest, [that] if the Higgins [sic] can fly first class, Mr. Higgins is not hurt – or can afford to not receive any

---

[19]*See* Defendant's Response to Plaintiff's Tenth Motion *in Limine* at 1-2, Docket No. 245 ("There are *no* additional State Auto employees that are anticipated witnesses that have not been disclosed in discovery or previously deposed by Plaintiff").

UIM proceeds" and that "Defendant may try to suggest that owning a Hummer means Mr. Higgins, who has undergone a neck and back surgery, is not hurt, or deserves less money because he can afford an H3," is speculative, and any issue that arises regarding improper argument based on this evidence can be properly handled by objection at trial. Plaintiff's Eleventh and Twelfth Motions *in Limine* are **DENIED**, but objections may be reurged at trial if appropriate.

**B. Defendant's Motion *in Limine***

       Defendant's Motion *in Limine* consists of 70 objections to evidence Defendant anticipates Plaintiff will attempt to introduce at trial. Objections 1 through 48 and 68 through 70 consist of one to two sentence objections with little, or in most cases, no supporting argument or legal authority. These objections largely pertain to Defendant's anticipation of Plaintiff presenting generally objectionable arguments.[20] As most of these issues are generally objectionable and will require minimal analysis, the Court defers judgment as to Defendant's Objections 1 through 48 and 68 through 70, and will address these issues in a subsequent Order. Substantive argument regarding Objections 49-67 is offered through Defendant's Brief in Support of its Motion *in Limine*.[21] Looking to each supported objection:

1. Objection Number 49

       In its forty-ninth objection, Defendant asks this Court to bar the introduction of evidence regarding reserve amounts as specifically related to Plaintiff's claim. The Court addressed this issue

---

[20]*See, e.g.,* Defendant's Motion *in Limine* at 4, Docket No. 140 ("23. The Golden Rule argument or any other argument attempting to place jurors in the place of the jurors. 24. Any argument or suggestion that a failure to award damages will cause Plaintiff financial hardship").

[21]Docket No. 154.

in its Opinion and Order on the parties' motions for summary judgment.[22] On this issue, the Court

found that the reserve figures in dispute do not represent Defendant's judgement as to the value of

Plaintiff's claim.[23] As such, the Court specifically finds that evidence regarding the reserve amounts

lack relevance to these proceedings, and introduction of this evidence would be more prejudicial

than probative. Defendant's Objection Number 49 is **GRANTED**.

2. Objection Number 50

In its fiftieth objection, Defendant asks this Court to bar any evidence related to Defendant's

alleged violation of the Oklahoma Unfair Claims Settlement Practices Act. The Court has previously

declined to entertain Plaintiff's argument that Defendant's conduct related to its waiver of

subrogation was a violation of the Act.[24] The Court also found that there was no delay in revealing

the Policy limits, which Plaintiff alleges was a further violation of the Act.[25] The Court has further

barred the testimony of Plaintiff's bad faith expert Mort G. Welch, Esq., including testimony related

---

[22]*See* Opinion and Order at 13, Docket No. 288 ("On this issue, the Court specifically rejects Plaintiff's contention that the reserve or "set-aside" amount calculated by Defendant in September of 2010 reflects an "undisputed" amount of benefits due under the Policy") (*citing GEICO v. Quine* 264 P.3d 1245, 1250, n.8 ("settlement offers or reserves set aside for insureds' claims do not equate to 'undisputed amounts' of benefits due under a policy") (*internal citations omitted*)).

[23]*See* Opinion and Order at 13, Docket No. 288 ("[T]he Court specifically rejects Plaintiff's contention that the reserve or "set-aside" amount calculated by Defendant in September of 2010 reflects an "undisputed" amount of benefits due under the Policy"). *See also LeBlanc v. Travelers Home & Marine Ins. Co*, 2011 WL 2748616, *4 (W.D.Okla. July 13, 2011) ("Internal reserves established by an insurance company are an estimate of potential liability in connection with a claim. They do not represent the insurer's judgment as to what a plaintiff should recover") (*citing Signature Dev. Cos. v. Royal Ins. Co. Of Am.,* 230 F.3d 1215, 1224 (10th Cir.2000)).

[24]*See* Opinion and Order at 7-8, Docket No. 288.

[25]*Id.* at 7-8.

to allegations that Defendant violated the Act.[26]

The Oklahoma Court of Civil Appeals in *Beers v. Hillory* held that evidence regarding violations of the Act is admissible for the narrow purpose of providing guidance in determining "whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for a bad faith claim."[27] However, the Oklahoma court offered two critical caveats when relying on such evidence: (1) a breach of the duty of good faith and fair dealing is not a violation of the Act, and (2) "a violation of the Act does not necessarily establish bad faith."[28]

To the extent that Plaintiff intends to offer evidence of Defendant's alleged violations of the Act *not* related (1) to the delay in revealing policy limits, (2) to the subrogation issue previously addressed by this Court, or (3) through the barred testimony of Mort G. Welch, Esq., this Court finds the evidence generally admissible, subject to a proper limiting instruction detailing the caveats promulgated by the *Beers* court. This limiting instruction should be presented to the jury both before the introduction of any such evidence and during final instructions. Defendant's Objection Number 50 is **DENIED**, subject to objection and argument at trial.

3. Objection Number 51

In its fifty-first Objection, Defendant seeks to limit evidence regarding Plaintiff's accident, specifically evidence regarding "the vehicle's trajectory, Plaintiff's ejection from the same, and the

---

[26]*See* Opinion and Order at 4-5, Docket No. 302.

[27]*Beers*, 2010 OK CIV APP 99, ¶¶30-31, 241 P.3d 285, 294 ("Therefore, the UCSPA can provide the district court with guidance in determining whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for a bad faith claim").

[28]*Id.* at ¶31, 294 ("However, when relying on the USPCA to establish a breach of the insurer's duty, two caveats are critical").

resultant damage to the vehicles."[29] Defendant argues that evidence of the severity of the accident may serve to inflame the jury and is far more prejudicial that probative. Ruling on this issue will require an assessment of the actual evidence Plaintiff intends to present at trial. Plaintiff's Objection Number 51 is **DENIED**, but may be reurged at trial if appropriate.

4. Objection Number 52/ Plaintiff's Fifth Motion *in Limine*

Defendant's fifty-second objection seeks to bar any evidence of Defendant's conduct or continuing duty after the instigation of litigation by Plaintiff. Whether or not an insurer's duty of good faith continues after the commencement of litigation is an unclear issue in Oklahoma law. In *Barnes v. Oklahoma Farm Bureau Mutual Insurance Company,* the Oklahoma Supreme Court implicitly held that an insurer's post-litigation conduct can violate the duty of good faith.[30] In *Barnes*, the insured filed suit in August 1991 to recover under a UIM policy.[31] Believing the handling of her claim over the next several months was unreasonable, the insured supplemented her petition in March 1992 to include a claim of bad faith.[32] The *Barnes* court held that the insurer's handling of the UIM claim was in bad faith, basing its decision primarily on insurer conduct occurring after the August 1991 date on which the insured filed her initial suit for recovery under the policy.[33] Based on its reading of *Barnes*, this Court finds that Oklahoma courts would likely hold that the duty of good faith and fair dealing extends into litigation until a claim has either been paid

---

[29]Defendant's Motion *in Limine* at 5, Docket 157-1.

[30]*Barnes*, 2000 OK 55, ¶¶57, 11 P.3d 162, 182.

[31]*Id.* at ¶6, 167.

[32]*Id.* at ¶7, 167.

[33]*Id.* at ¶¶9-19, 167-68 (citing check discrepancies in November 1991, tentative settlement notices in December 1991).

or denied.[34]

However, using post-litigation conduct as evidence is another matter. The Tenth Circuit in *Timberlake Construction Company v. United States Fidelity & Guaranty Company* recognized that litigation conduct "should rarely, if ever, be allowed to serve as proof of bad faith."[35] However, other courts have found post-litigation conduct admissible in certain instances. This Court's decision in *Butterfly-Biles v. State Farm Life Insurance Company* involved a single failure to investigate claim.[36] The Court stated:

> Normally, the key to such a claim would be State Farm's conduct up to and including the time it made a decision to deny Plaintiff the proceeds under the policy. In such a case, State Farm's conduct after that decision and after a lawsuit has been filed is irrelevant.[37]

However, the insurer in *Butterfly-Biles* sought to introduce evidence that Plaintiff's claim had not been denied and that claim review was ongoing.[38] The Court found that since no decision as to payment or denial had been made even after the lawsuit was filed, this post-litigation investigatory conduct may be relevant to Plaintiff's bad faith claim.[39] The insurer sought to use evidence of this post-litigation investigation to defeat Plaintiff's failure to investigate claim, but

---

[34]*See also, Roesler v. TIG Ins. Co.,* 251 Fed.Appx 489, 498, (10th Cir.2007) (*citing Hale v. A.G. Ins. Co.,* 2006 OK CIV APP 80, ¶6, 138 P.3d 567, 571-72 ) (stating that post-litigation conduct is relevant until either payment or denial of a claim).

[35]*Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 340 (10th Cir.1995).

[36]*See Butterfly-Biles v. State Farm Life Ins. Co*, 2010 WL 346838, *3 (N.D.Okla., January 21, 2010).

[37]*Id.*

[38]*Id.*

[39]*Id.*

attempted to hide the nature and extent of the investigation through invocation of attorney-client privilege.[40] The Court ruled that either (1) the insurer produce a witness to testify as to the nature of the ongoing investigation or (2) stipulate that it would not use evidence of the post-litigation investigation to defend the claim.[41]

This case also closely mirrors the Western District of Oklahoma case of *Morgan v. Valley Insurance Company.*[42] In *Morgan*, the insured argued his claim was not denied, but was under continuing review, and Plaintiff sought to introduce evidence of continuing delaying conduct by the insurer that went on nearly three years after the claimed loss.[43] The *Morgan* court found itself unable to make a bright-line ruling as to the admissibility of the litigation conduct, but noted that most of the insurer's exhibits post-date the filing of the lawsuit, and therefore found some of the post-litigation evidence of the insurer's conduct should be admissible.[44] In doing so, the *Morgan* court stated that:

> Defendant should not be allowed to rely on post-litigation events to demonstrate its effort to comply with the policy and the pay the claim while denying Plaintiff any opportunity to argue that Defendant's effort was unreasonable and insufficient. It would seem that Defendant's policy regarding claim handling or adjustment after a lawsuit is filed may be explained to the jury in the same manner as other claims handling policies or practices.[45]

In both *Butterfly-Biles* and *Morgan*, the defendant insurer sought to introduce evidence of

---

[40]*Id.*

[41]*Id.*

[42]*See Morgan v. Valley Ins. Co.*, 2009 WL 3755076, *4 (W.D.Okla.,Nov. 5, 2009).

[43]*Id.* at 4.

[44]*Id.*

[45]*Id.*

its continuing investigation to defend against the insured's claims of delay of swift payment. In an attempt to comport with these cases and keep post-litigation conduct from the jury, Defendant has specifically agreed in its Motion *in Limine* "that it will not seek to use its post-litigation acts in defense of Plaintiff's claims."[46] This Court does not believe that resolves the issue.

The *Morgan* court distinguished the litigation conduct deemed inadmissible in *Timberlake* from the litigation conduct the *Morgan* parties sought to admit.[47] In *Timberlake*, the insured sought to admit evidence of insurer conduct such as disparaging remarks in a letter from insurer's counsel, filing of a counterclaim, and a motion to join a third party.[48] The *Morgan* parties sought to include evidence of post-litigation payments and the nature of an insurer's continuing investigation. The Court believes this is an important distinction.[49] The conduct Plaintiff apparently seeks to admit does not pertain to litigation *per se*, rather it pertains to Defendant's continuing investigation. Such conduct is directly relevant to the reasonableness of Defendant's over two-year delay in resolving Plaintiff's claim.[50]

The claim in this case has been neither fully paid nor denied, continuing the duty of good faith and fair dealing well into the litigation. To allow Defendant to "opt out" of introducing

---

[46]Defendant's Motion *in Limine* at 7, Docket No. 157-1.

[47]*Morgan,* 2009 WL 3755076 at *4.

[48]*Id.*

[49]*Id.*

[50]*See, e.g., Roesler v. TIG Ins. Co.,* 251 Fed.Appx 489, 498 (10th Cir.2007) ("The duty of good faith and fair dealing exists during the time the claim is being reviewed;" "[T]he analysis in bad faith cases indicates the cutoff for relevant evidence is the date of payment or denial of the claim") (*citing Hale v. A.G. Ins. Co.,* 2006 OK CIV APP 80, ¶6, 138 P.3d 567, 571-72 (*internal quotations omittied*).

evidence of its continuing investigation would conceal from the jury over one year of relevant conduct with regard to the *ongoing* investigation of Plaintiff's claim. This has the potential to unfairly prejudice both sides. That Defendant is willing to take that risk is not good cause for the Court to grant its Objection. As such, at least some of the parties' post-litigation conduct should be admissible. Defendant's Objection Number 52 is **DENIED**.

As in *Morgan*, this is not a bright-line ruling deeming admissible all instances of the parties' conduct after the commencement of litigation. In fact, the *Morgan* court's parameters are an apt starting point for this Court's ruling on the admissibility of post-litigation conduct. As such, the court finds that the parties' post-litigation conduct related to continuation of claim investigation, evaluation, processing, and payment or non-payment will generally be deemed admissible.[51]

In contrast, the case of *Sims v. Travelers Insurance Company* offers examples of conduct that have been held not indicative of bad faith and are therefore wholly inadmissible.[52] This conduct includes: treating Plaintiff as an adversary, filing motions to dismiss, objecting to discovery, misdocketing meetings, failing to agree to deposition times, and rejecting requests for mediation.[53]

These are guideposts for trial, not exhaustive lists of admissible or inadmissible evidence. In sum, the Court will generally admit *investigation* conduct and exclude *litigation* conduct. Objections should still be asserted at trial as appropriate to particular testimony or items of evidence. As this Court cannot issue a bright-line rule as to the admissibility of post-litigation conduct, the Court cannot easily assess the relevance of Plaintiff's Fifth Motion *in Limine* regarding the

---

[51]*See Morgan,* 2009 WL 3755076 at *4.

[52]2000 OK CIV APP 145, ¶10, 16 P.3d 468, 471.

[53]*Id.* at 471.

admissibility of evidence related to the time it took Plaintiff to negotiate Defendant's partial settlement check outside the context of trial. As such, Plaintiff's Fifth Motion *in Limine* is **DENIED,** but any objection may be reurged at trial if appropriate.

## 5. Objection Number 53

In its fifty-third objection, Defendant seeks to bar any evidence offering legal conclusions or interpreting Defendant's conduct in relation to the law. The Court has previously ruled on this evidence in its Opinion and Order at Docket Number 302 in excluding the parties' proposed bad faith experts. To the extent there is other proposed evidence offering legal conclusions that the Court has not ruled upon, the Court lacks sufficient context to assess its reliability and relevance. Defendant's Objection Number 53 is **DENIED**, to be reurged at trial if appropriate.

## 6. Objection Number 54

Defendant's fifty-fourth objection seeks to bar testimony, evidence, and argument that Defendant owed Plaintiff a duty under Oklahoma law to tender a partial payment. This Court has previously ruled that Defendant's failure to make a partial payment does not constitute bad faith as a matter of law.[54] Consistent with this Court's Opinion and Order on Summary Judgment, Defendant's Objection Number 54 is **GRANTED**.

## 7. Objection Number 55

Defendant's fifty-fifth objection asks this Court to bar all evidence that Defendant requested a release. In opposition, Plaintiff cites the unpublished decision of *Hatfield v. Liberty Mutual Insurance Company* for the proposition that it is bad faith to "hold undisputed amounts hostage"

---

[54]Opinion and Order at 10-12, Docket No. 288.

through the requirement of a release of all claims.[55] In *Hatfield*, there was an agreed, undisputed amount that could have been paid, but the insurer required a release of all claims before it would pay that undisputed amount.[56] Unlike *Hatfield*, in this case there was, and is, an ongoing dispute as to the scope of Plaintiff's claim and no agreed amount of undisputed damages. Defendant alleges the release in question was mistakenly requested in response to what Defendant perceived to be a claim for full payment.[57] Plaintiff alleges his request was merely for an advance payment of perceived undisputed claim amounts for which requiring a release of the full claim amount is improper and in bad faith.[58] Oklahoma law generally permits an insurer to request a release upon tender of the policy limits or settlement of a claim.[59] This creates a disputed question of fact as to whether the single release request cited by Plaintiff was a bad faith attempt to make Plaintiff settle for less than the value of his claim or whether it was a reasonable mistake on the part of Defendant.[60] Consequently, any evidence that Defendant requested a release is a matter for the jury. Defendant's Objection

---

[55]Plaintiff's Response to Defendant's Motion *in Limine* at 8-9, Docket No. 249 (*citing Hatfield*, 98 Fed.Appx 789, 794 (10th Cir.2000)).

[56]*Hatfield*, 98 Fed.Appx at 794.

[57]*See Buchele Deposition* at 2-3, 73:25-74:1-6, Docket No. 290.

[58]Plaintiff's Response to Defendant's Motion *in Limine* at 8-9, Docket No. 249 (*citing Hatfield*, 98 Fed.Appx at 794).

[59]*Beers v, Hillory*, 2010 OK CIV APP 99, ¶28, 241 P.3d 285, 293.

[60]*See id.* at 292 (*citing Bailey v. Farmers Ins. Co., Inc*., 2006 OK CIV APP 85, ¶ 18, 137 P.3d 1260, 1264 ("Insurers are free to make legitimate business decisions (and mistakes) regarding payment"); *National Mut. Cas. Co. v. Britt*, 1950 OK 159,¶ 16, 218 P.2d 1039, 1042 (*quoting Mendota Elec. Co. v. New York Indemnity Co.*, 175 Minn. 181, 221 N.W. 61, 62 ("It takes something more than mere mistake to constitute bad faith, particularly with respect to the action of an insurer under a policy of public liability who is not absolutely bound to make a settlement").

Number 55 is **DENIED**. Under no circumstances should party argument on the topic of this release discuss, suggest, or allude to any legal or moral duty on the part of the Defendant to provide an advance or partial payment on Plaintiff's claim.[61]

## 8. Objection Number 56

Defendant's fifty-sixth objection seeks to bar evidence related to Defendant's handling of its subrogation release obligations with respect to Plaintiff. The Court has previously rejected Plaintiff's argument that Defendant's handling of its subrogation waiver was an attempt to trick Plaintiff.[62] Consequently, any evidence purporting to support this notion is inadmissible. Defendant's Objection Number 56 is **GRANTED**.

## 9. Objection Number 57

Defendant's fifty-seventh objection asks the Court to bar evidence of any letter sent to Plaintiff after Plaintiff had retained counsel. Outside the context of the trial, the Court cannot speak as to any letter's relevance. Defendant's Objection Number 57 is **DENIED**, to be reurged at trial if appropriate.

## 10. Objection Number 58

Objection number fifty-eight seeks to limit evidence regarding clerical errors, typographical errors, and other administrative details of Plaintiff's claim file. This matter is best handled in the context of trial, where the Court can better assess the relevance of the errors in question. Defendant's Objection Number 58 is **DENIED**, to be reurged at trial if appropriate.

---

[61]*See* Opinion and Order at 12, Docket 288.

[62]Opinion and Order at 7, Docket 288.

11. Objection Number 59

Defendant's fifty-ninth objection seeks to bar any testimony stating that Defendant's alleged delegation of duty to Plaintiff's Attorney Tom Sullivent relative to obtaining Plaintiff's medical records was bad faith. The Court has previously excluded expert testimony regarding whether or not Defendant breached any duty during its investigation because such testimony invades the province of the jury.[63] However, direct evidence of how Defendant handled Plaintiff's claim is likely relevant to the question of whether or not Defendant performed an adequate investigation. As such, any objection as to evidence of Defendant using Attorney Sullivent to collect medical records is best addressed in the context of trial. Insofar as Plaintiff seeks to admit evidence Defendant's claims handling procedures Objection Number 59 is **DENIED**, to be reurged at trial if appropriate.

12. Objection Number 60.

Defendant's sixtieth objection seeks to bar the introduction of evidence that Defendant treated Plaintiff's claim as a "third-party claim" rather than a "first-party claim." Defendant alleges that this conclusion is baseless.[64] This matter is best handled in the context of trial, where the Court can better assess the foundation and relevance of any evidence Plaintiff can muster in support of this proposition. Defendant's Objection Number 60 is **DENIED**, to be reurged at trial if appropriate.

13. Objection Number 61

Defendant's sixty-first objection asks the Court to bar any evidence or testimony that Plaintiff hired an attorney based upon actions or omissions of Defendant or its representatives.

---

[63]Opinion and Order at 4-5, Docket No. 302.

[64]Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion *in Limine* at 7, n.8, Docket No. 290.

Plaintiff's argument against Defendant's Motion *in Limine* states that this issue is intertwined with evidence regarding the subrogation issue upon which the Court has previously ruled.[65] Specifically Plaintiff seeks to admit evidence that Defendant's alleged intentional attempt to force Plaintiff to waive subrogation motivated him to seek counsel.[66] Insofar as the Court has previously ruled on the issue of subrogation, evidence of Plaintiff's hiring of a lawyer in response to that alleged conduct is inadmissible. Defendant's Objection Number 61 is **GRANTED**. To the extent Plaintiff can offer other, proper foundation for evidence as to Plaintiff's reasons for retaining counsel, the Court may entertain argument at trial.

14. Objection Number 62

In its sixty-second objection, Defendant seeks to bar any evidence regarding former employees' rationale for terminating employment with Defendant. Plaintiff does not directly oppose this objection, stating only that: "[t]he jury is entitled to know the timing of each change of assigned adjuster, as well as the *reasons* State Auto has asserted for each change."[67] On this matter the Court concurs with both parties. To the extent Plaintiff seeks to offer evidence or elicit testimony as to why any particular employee terminated his employment with Defendant, such information is irrelevant to these proceedings and would be far more prejudicial that probative. Defendant's Objection Number 62 is **GRANTED**. This ruling has no impact on any proffer of evidence related to the changing of adjusters during the course of the ongoing investigation or the reasons Defendant has asserted for the change.

---

[65]Opinion and Order at 7, Docket No. 288.

[66]Plaintiff's Response in Opposition to Defendant's Motion *in Limine* at 13, Docket No. 249.

[67]*Id.* at 13 (*emphasis in original*).

## 15. Objection Number 63

Defendant's sixty-third objection seeks to prohibit testimony or evidence regarding claims adjuster George Gartelos working from home. Plaintiff argues that this information is relevant to how his claim was allegedly mismanaged. This matter is best handled in the context of trial, where the Court can better assess the context, foundation, and relevance of any evidence proffered on this matter. Defendant's Objection Number 63 is **DENIED**, to be reurged at trial if appropriate.

## 16. Objection Number 64

Defendant's sixty-fourth objection seeks to exclude any evidence regarding Defendant's claims manual regarding "set-offs." Defendant contends that set-offs are not at issue in this case, and Plaintiff has provided no support for his contention that set-offs were used. This is another matter that is best handled in the context of trial, where the Court can better assess the foundation and relevance of any evidence proffered on this matter. Defendant's Objection Number 63 is **DENIED**, to be reurged at trial if appropriate.

## 17. Objection Number 65

In its sixty-fifth objection, Defendant seeks to bar evidence of medical liens filed against Plaintiff that impacted his credit score and were allegedly filed as a result of Defendant's slow payment of Plaintiff's claim. Plaintiff alleges these liens and subsequent impact on his credit score caused him mental distress. Mental distress is a key component of Plaintiff's actual damages claim. Defendant alleges that Plaintiff has failed to provide evidence that substantiates his claims about medical liens and his drop in credit score. To the extent Plaintiff seeks to offer evidence of unpaid *medical bills* and their impact on Plaintiff's mental state, Defendant's Objection Number 65 is

**DENIED**. Insofar as Plaintiff seeks to introduce testimony at trial that Plaintiff had medical liens and credit issues that further affected his mental state, Plaintiff must provide the proper foundation for such testimony to Defendant before trial, and the Court will entertain motion and argument before any attempt to introduce such evidence at trial.

## 18. Objection Number 66

Defendant's sixty-sixth objection seeks to bar evidence or testimony regarding Defendant's alleged failure to reveal the limits of the UIM Policy. This Court has previously ruled that Defendant did not fail to reveal the Policy limits.[68] Any evidence of Defendant's alleged delay in disclosing limits is therefore irrelevant to this action. Defendant's Objection Number 66 is **GRANTED**.

## 19. Objection Number 67

Defendant's sixty-sixth objection seeks to exclude "any evidence of Plaintiff's damages for future medical care, future lost wages, or impairment of future earnings, and any other special damages not specifically pled."[69] Plaintiff states that none of these losses have been determined, but "respectfully states, the value of the actual damages of the underlying UIM claim exceeds the full policy limits."[70] To the extent Plaintiff may or may not seek to introduce evidence of future losses or other special damages not specifically pled, the Court cannot rule on this objection outside the context of a proposed admission at trial. Defendant's Objection Number 66 is **DENIED**, to be reurged at trial if appropriate.

---

[68]Opinion and Order at 8, Docket No. 288.

[69]Defendant's Motion *in Limine* at 22, Docket No. 157-1.

[70]Plaintiff's Response to Defendant's Motion *in Limine* at 17, Docket 249.

## CONCLUSION

For the reasons cited herein, Plaintiff's First, Second, Third, Fourth, Fifth, Ninth, Eleventh, and Twelfth Motions *in Limine* are **DENIED**.[71]  Plaintiff's Tenth Motion *in Limine* is **DENIED AS MOOT**.[72] Defendant's Motion *in Limine* is **GRANTED IN PART, DENIED IN PART**, consistent with this Order and Opinion.[73]

IT IS SO ORDERED, this 2nd day of July, 2012.

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[71]Docket No.'s 141, 142, 143, 144, 145, 150, 152, and 153. *Also* Errata Correction to Plaintiff's Fifth Motion in Limine at Docket No. 155.

[72]Docket No. 151.

[73]Docket 140.